UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

S.M., *a minor, by her next friend,*
ALISON KING,

                     Plaintiff,

              -v-

CITY OF NEW YORK and GOOD
SHEPHERD SERVICES,

                     Defendants.

20-CV-5164 (JPO)

OPINION AND ORDER

─────────────────────────────────────────

J. PAUL OETKEN, District Judge:

    S.M., a minor in the foster care system, brings suit under 42 U.S.C. § 1983 against the City of New York ("the City") and Good Shepherd Services ("Good Shepherd"). S.M. claims her rights under the Fourteenth Amendment and the Adoption Assistance and Child Welfare Act of 1980 ("AACWA") were violated when she was held for five months in the City's custody at a Good Shepherd facility. S.M. also brings several claims under New York state law. The City and Good Shepherd move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. The Court heard oral argument on the pending motions on June 17, 2021. For the reasons that follow, Defendants' motions are granted in part and denied in part.

**I.    Background**

    The following facts, drawn from the operative complaint, are presumed true for the purposes of this motion. (*See* Dkt. No. 25 ("FAC").)

    S.M., a minor, was thirteen years old when the events at issue in this case began. (FAC ¶ 1.) The City had custody of S.M. for a portion of 2019 through the Administration for Children's Services ("ACS"), a foster services agency. (*Id.*) Good Shepherd, a not-for-profit

1

corporation that contracts with ACS to offer foster care services, operates Euphrasian, the mental health facility where S.M. was held. (FAC ¶ 10.)

In April 2019, S.M. entered ACS custody following reports of sexual abuse at her home. (FAC ¶¶ 24–26.) On April 7, S.M. was transferred to Euphrasian. (FAC ¶ 29.) Euphrasian is a "diagnostic facility . . . for female adolescents requiring supervision because of mental illness, violent behavior, criminal records, or other similar issues." (FAC ¶ 30.) Euphrasian is not intended to be a long-term housing facility, but rather is for "short-term stays of female adolescents in crisis before they are placed in an appropriate long-term situation." (*Id.*) Nevertheless, due to Defendants' practice of assigning foster placements based on the availability of spots in various care settings, not based on a child's needs, S.M. was "indefinitely warehous[ed]" at Euphrasian. (FAC ¶ 36.) Indeed, S.M. was held at the facility for five months, four of which came after a psychological evaluation conducted by Good Shepherd staff recommended that S.M. be removed from Euphrasian and sent to a therapeutic foster home. (FAC ¶ 35.)

At Euphrasian, S.M.'s freedom of movement was limited. (FAC ¶¶ 31, 60.) Her education suffered since she was unable to attend her school in person and conditions at the facility made remote learning difficult. (FAC ¶¶ 45–49.) S.M.'s access to therapy was also interrupted and she was bullied, harassed, and threatened by other residents, to the point that she was removed from the general population on several occasions. (FAC ¶¶ 40, 55–59.) S.M. raised these various issues with her ACS caseworker and Good Shepherd staff, but her placement at Euphrasian was maintained. (FAC ¶ 41.)

S.M.'s mental health was directly damaged by her time at Euphrasian: She has been diagnosed with post-traumatic stress disorder and suffers from nightmares, anxiety, and phobias

related to her stay. (FAC ¶ 66–67.) Furthermore, the stay at Euphrasian created second-order stressors for S.M., as she was isolated from friends and relatives (only one friend could see her) and fell behind in school. (FAC ¶ 63–64.)

S.M. brings this action seeking damages for the harms she suffered while inappropriately placed at Euphrasian. She alleges that Defendants violated her Fourteenth Amendment due process rights, including her right to be free of unreasonable and unnecessary intrusions into her emotional well-being. Additionally, S.M. alleges that Defendants deprived her of a written case plan of the type to which AACWA entitles her. Finally, S.M. alleges that she was deprived of the type of foster care to which she is entitled under New York law and that Defendants negligently placed and supervised her at Euphrasian.

## II.     Standard of Review

A plaintiff facing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Furthermore, the Court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

In reaching a decision on a motion to dismiss, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira*

*v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted). However, those are the *only* materials outside of the complaint that the Court may consider. *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007).

### III. Discussion

Defendants advance several arguments in favor of dismissing S.M.'s claims: (1) that the *Rooker-Feldman* doctrine deprives the Court of subject matter jurisdiction in this case; (2) that the Section 1983 claims should be dismissed because no individual defendant is named; (3) that S.M. has failed to plausibly allege that Defendants had a "policy or custom" of depriving patients of their rights; (4) that Good Shepherd is not a "state actor" that can be held liable under Section 1983; (5) that the conduct S.M. alleges does not plausibly rise to the level of a Fourteenth Amendment violation; (6) that AACWA does not grant a private right of action; and (7) that the Court should either decline to exercise supplemental jurisdiction over the state claims or dismiss them outright. The Court addresses each of these arguments in turn.

#### A. The *Rooker-Feldman* Doctrine

The only federal court with jurisdiction to review state-court judgments is the Supreme Court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Therefore, under the *Rooker-Feldman* doctrine, inferior federal courts must "abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 155 (2d Cir. 2010). S.M.'s allegations do not satisfy these criteria. S.M. claims that Defendants violated her rights after the New York Family Court placed her in their care. (FAC

¶ 6.) The injuries she alleges were caused not by the court's judgment, but by those responsible for her at Euphrasian. (*See, e.g.*, Comp. ¶¶ 22, 66.) Moreover, S.M. is not seeking a review of the judgment placing her into ACS's care, so she is not seeking district court review of a previously entered state court judgement. The *Rooker-Feldman* doctrine is inapplicable here.

### B. Lack of Individual Defendants

Pursuant to Section 1983, "every person" who, acting under color of state law, violates a person's rights granted by the Constitution or federal law may be held liable.[1] It is well settled that local governments are "persons" not "wholly immune from suit under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 663 (1978). Although typically Section 1983 claims are brought against individuals and government agencies together, Defendants'

---

[1] The City's suggestion that Section 1983 provides a right of action only for constitutional violations is incorrect. (*See* Dkt. No. 21 at 10.) One case cited for this proposition, *Martinez v. City of New York*, is not binding precedent. 340 Fed. App'x 700, 702 (2d Cir. 2009). Moreover, the binding precedent cited by the summary order in *Martinez*, *Curley v. Village of Suffern*, does not suggest that constitutional violations are the *only* available basis for Section 1983 actions — statutory claims were simply not at issue in the case. 268 F.3d 65 (2d Cir. 2001). The *Curley* court cited the Supreme Court's observation in *City of Los Angeles v. Heller* that "if a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Curley*, 268 F.3d at 71 (quoting *Heller*, 475 U.S. 796, 799 (1986) (per curiam)). The *Curley* court observed that *Heller* meant that the Second Circuit had "recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights." 268 F.3d at 71 (quoting *Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999)). But neither *Curley* nor *Heller* purported to address Section 1983's protection of constitutional rights as distinguished from federal *statutory* rights. Indeed, the statute itself plainly states that that Section 1983 provides relief for those deprived of "any rights, privileges, or immunities secured by the Constitution *and laws*." 42 U.S.C. § 1983 (emphasis added). For recent recognition that Section 1983 actions can be based on federal statutory rights, see, for example, *Hickman v. City of New York*, No. 19 Civ. 5292, 2021 WL 2473806, at *3 (S.D.N.Y. June 17, 2021) ("To state a claim under Section 1983, a plaintiff must allege two elements: '[i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges.'") (quoting *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)).

suggestion that individual defendants are *required* for such an action is unsupported by any authority. Furthermore, the Second Circuit has held that municipalities can be liable under Section 1983 even when an individual defendant is found not liable. *See, e.g.*, *Barret v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999).

      **C.**     ***Monell* Liability**

Although Section 1983 allows local governments to be held liable for their employees' actions, those employees must be acting "under color of [a state] statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Therefore, to be viable, a Section 1983 claim must establish "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a . . . right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quotation omitted). On one hand, "official policy need not be explicit; it also need not be an affirmative act." *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 596 (S.D.N.Y 2011). On the other hand, where a custom is implicit or involves a failure to act, a plaintiff attempting to prove an impermissible custom must show both a pattern of rights violations, *see DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998), and the "deliberate indifference of supervisory officials" to abuse, *Jones v. Town of East Haven*, 691 F. 3d 72, 81 (2d Cir. 2012).

Drawing all reasonable inferences in S.M.'s favor, as it must at this stage, the Court finds plausible S.M.'s claims that there is an official policy or custom of "warehousing" children in facilities ill-suited to their needs. It is true that S.M. has not alleged that this policy is in writing or that she overheard the alleged policy discussed by staff. (*See* Dkt. No. 34 at 3.) Yet S.M. need not allege such specific facts at this stage. The City's description of the facts that must be alleged for a claim to be plausible is overly stringent. (*See id*.) S.M.'s pleadings, viewed in the most favorable light, "tends to support, at least circumstantially" the inference that the policy she

6

alleges exists.  This is the standard she must meet.  *See Oparaji v. City of New York*, No. 96 Civ. 6233, 1997 WL 139160, at *3 (E.D.N.Y. Mar. 21, 1997) (quotation omitted).  Indeed, the fact that S.M. remained at Euphrasian despite raising her allegedly improper placement to staff tends to support an inference that Defendants fostered a culture of deliberate indifference.  The Court finds S.M.'s allegations sufficiently plausible to survive a motion to dismiss.

### D. Good Shepherd as a State Actor

Good Shepherd seeks to dismiss the Section 1983 claims against it, arguing that as a private entity it was not acting "under color of any statute, ordinance, regulation, custom, or usage, of any State."  42 U.S.C. § 1983.  Despite the strength of Good Shepherd's argument, the Court remains bound by Second Circuit precedent holding that foster care providers are state actors for purposes of Section 1983.

A plaintiff asserting Section 1983 claims must show state action.  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam).  However, formally private entities "may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action."  *Perez v. Sugarman* 499 F.2d 761, 764 (2d Cir. 1974) (quotation omitted).  A key marker of whether private entities are engaging in "state action" is whether "those private parties are performing a function public or governmental in nature and which would have to be performed by the Government but for the activities of the private parties."  *Id.* at 765.  The Second Circuit has held that foster agencies meet this test, *id.,* and declined to overrule this holding, *see, e.g.*, *Phelan ex rel. Phelan v. Mullane*, 512 F. App'x 88, 90 (2d Cir. 2013), despite every other circuit now agreeing that private foster agencies do *not* act under color of state law, *see Howell v.*

*Father Maloney's Boys' Haven, Inc.*, 424 F. Supp. 3d 511, 519 (W.D. Ky. 2020) (collecting circuit cases), *aff'd*, 976 F.3d 750 (6th Cir. 2020).

A number of district courts in this circuit have noted that treating foster agencies as state actors is in tension with the Supreme Court's increasing skepticism — in the almost forty years since *Perez* — toward applying constitutional demands to plausibly private action. *See, e.g.*, *Castro v. Windham*, No. 16 Civ. 8148, 2017 WL 4676644, at *4 (S.D.N.Y. Sept. 19, 2017); *P.P. v. City of New York,* No. 13 Civ. 5049, 2014 WL 4704800, at *15 (S.D.N.Y. Sept. 19, 2014). In fact, six months after *Perez,* the Supreme Court announced that only private actors performing functions "traditionally *exclusively* reserved to the State" could be liable under Section 1983. *Jackson v. Metro. Edison Co.* 419 U.S. 345, 352 (1974) (emphasis added). In New York, foster care has not traditionally been an exclusive state function, as Judge Korman detailed in *Phelan ex rel. Phelan v. Torres*, 843 F. Supp. 2d 259, 270 (E.D.N.Y. 2011*)*, *aff'd sub nom. Mullane*, 512 F. App'x 88. Nevertheless, despite reservations about whether foster agencies *should* be considered state actors, Judge Korman concluded that foster agencies can be liable under Section 1983 until the Second Circuit holds otherwise. *See Torres* 843 F. Supp. 2d*.* at 274.

Good Shepherd cites two district court cases in this circuit independently holding that foster agencies are not state actors. *See CB v. St. Vincent's Servs., Inc.*, No. 16 Civ. 2282, 2018 WL 1737701, at *4 (S.D.N.Y. Mar. 19, 2018) (holding that "the view enunciated by the Supreme Court [in imposing an 'exclusively reserved' standard] has substantially replaced the approach relied upon in *Perez*"); *Raghunath v. New York*, No. 14 Civ. 4218, 2015 WL 4623467, at *6 (E.D.N.Y. July 30, 2015). However, the Court remains bound by the Second Circuit, and several recent cases in this circuit note that the precedential weight of *Perez* remains clear, despite the shaky foundations of its underlying logic. *See Castro*, 2017 WL 4676644, at *4; *Mortimer v.*

*City of New Y*ork, No. 15 Civ. 7186, 2018 WL 1605982, at *13 (S.D.N.Y. Mar. 29, 2018).  Good Shepherd is a state actor under Second Circuit precedent, and the claims against it survive.

      **E.**      **S.M.'s Fourteenth Amendment Claims**

As a person in state custody, S.M. has a Fourteenth Amendment right "to protection from harm," which includes protection from physical injury, but also "free[dom] from unreasonable and unnecessary intrusions into [her] emotional well-being." *Marisol A. ex rel. Forbes v. Giuliani*, 929 F. Supp. 662, 675 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997).  To prevail on her Fourteenth Amendment claim, S.M. must show that she was physically or mentally harmed in a way that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (citation omitted).  Plaintiff argues that the "egregious, outrageous" standard "applies only to separation of children from their parents." (Dkt. No. 30 at 9.)  While the *Southerland* court applied the "egregious, outrageous" standard to child removal, this is a general test for substantive due process claims and applies in many circumstances.  *See, e.g.*, *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (finding the "egregious, outrageous" standard applied when determining whether false government reassurances that the post-9/11 World Trade Center site was safe violated due process).

It is true that courts have found municipal conduct to be egregious or outrageous primarily in cases where children suffered abuses seemingly more graphically disturbing than the abuse S.M. alleges.  *See, e.g.*, *Marisol A.*, 929 F. Supp. at 670 (the child plaintiff was "confined to a closet for several months, deprived her of sustenance resulting in her eating her own feces"); *Doe ex rel. Johanns v. N.Y. City Dep't of Soc. Servs.*, 670 F. Supp. 1145, 1155–58 (S.D.N.Y. 1987) (children were deprived of adequate sleeping quarters, family communication, food, and

9

mental care). Regardless of how the claims at hand stack up against those in other due process cases, to survive a motion to dismiss, S.M. must only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, the length of time S.M. was in Euphrasian, the fact S.M.'s physical safety was allegedly threatened, and the mental and emotional trauma S.M. endured together suggest that a Fourteenth Amendment violation is plausible, and that there is "more than '[t]he mere . . . scintilla of evidence in support'" of her claims. *See Hayut v. State U. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Plaintiff is entitled to discovery to show that Defendants' conduct in fact meets the high bar of the "egregious, outrageous" standard.

### F. S.M.'s Claims Under the AACWA

The Defendants move to dismiss S.M.'s AACWA claims under the theory that the interlocking AACWA provisions S.M. cites — 42 U.S.C. §§ 671(a)(16), 671(a)(22), 675(1)(A), 675(1)(B), 675(1)(G), and 675(5)(A) — do not create a right of action. To be sure, none of these sections explicitly provides a private right of action. However, Plaintiff contends that the AACWA provisions grant her federal statutory rights, which could then be enforced via Section 1983.

The test to determine whether a federal statute creates a right has three prongs: (1) Congress must have "intended that the provision in question benefit the plaintiff"; (2) the statute must "unambiguously impose a binding obligation on the States"; and (3) the right must not be "so vague and amorphous that its enforcement would strain judicial competence." *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997) (internal quotation marks omitted). Furthermore, even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a

rebuttable presumption that the right is enforceable under Section 1983. *Id*. at 341. "[D]ismissal is proper if Congress 'specifically foreclosed' a remedy under § 1983" by expressly precluding Section 1983 claims or by creating "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983" thereby impliedly foreclosing claims under that provision. *Id.* (citations omitted). The Court thus must determine whether each of the provisions S.M. cites creates an enforceable right under the *Blessing* test.

1. **Section 671(a)(16)**

Section 671(a)(16) requires that, in order to receive federal funds tied to foster care, each state have a plan that: "provides for the development of a case plan [] as defined in section 675(1) of this title . . . for each child receiving foster care . . . and provides for a case review system which meets the requirements described in sections 675(5) . . . of this title with respect to each such child." 42 U.S.C. § 671(a)(16). This requirement meets all three parts of the *Blessing* test. First, the provision clearly seems to benefit "each child" in state foster care, of whom S.M. was one. Second, the statute imposes an unambiguous obligation on the states. Indeed, in *Wilder v. Virginia Hosp. Ass'n*, the Supreme Court held that a statute allowing federal funds to be withheld in case of noncompliance constituted an obligation enforceable under Section 1983. 496 U.S. 498, 512 (1990) (finding the withholding language in a case about Medicaid payments "succinctly sets forth a congressional command, which is wholly uncharacteristic of a mere suggestion or nudge") (quotations omitted). Third, the right created within Section 671(a)(16) is neither vague nor amorphous, since it simply requires the development of a case plan.[2] *See Eliza*

---

[2] For all the AACWA sections discussed, Congress did not specifically foreclose enforcement, nor did it create another enforcement mechanism.

11

*W. ex rel. Barricelli v. City of New York*, No. 15 Civ. 5273, 2016 WL 4750178, at *5 (S.D.N.Y. Sept. 12, 2016) (similarly concluding that Section 671(a)(16) creates a private right of action).

### 2.   Section 675(1)

S.M. claims that, in addition to the right to a case plan, Section 671(a)(16) creates federal rights to the features described in the Sections 675(1) and 675(5).  With respect to Section 675(1), the Court disagrees with S.M. and will grant Defendants' motions to dismiss claims under this section.  Section 671(a)(16) states that Section 675(1) "define[s]" the case plan, making it unclear whether Section 675(1) "unambiguously creates a binding obligation." Additionally, as Judge Swain explained in a 2016 opinion, the text of Section 675(1) itself "is phrased largely in terms of requiring 'discussion' of safety, placement propriety and other issues, and of 'design' to meet certain goals or outcomes. . . . While it is of course to be expected that a plan will be implemented, nothing in the statutory language specifically requires implementation or achievement of all of the particulars of the plan, much less successful achievement of outcomes." *Barricelli*, 2016 WL 4750178 at *6. Admittedly, Subsections 675(1)(B) and 675(1)(G) also use the verbs "assuring" and "ensuring." Nevertheless, as a whole, Section 675(1) sounds mostly in the register of definitional guidance. Furthermore, even if Congress intended Section 675(1) to impose a binding obligation, this obligation would be too "amorphous" for judicial enforcement.  S.M. herself argues that Section 675(1) deals with "address[ing] her individual needs" (Dkt. No. 31 at 21); determining a particular child's needs as a matter of law would indeed "strain judicial competence" and would also be tantamount to enforcing a requirement that foster children achieve successful outcomes.  Because Section 675(1) does not pass the second or third prong of the *Blessing* test, there is no right of action under Section 675(1) and the claims thereunder are dismissed.

3.     Section 675(5)

Section 675(5) does grant S.M. a right to certain mandatory features of a case plan. The part of the Section under which S.M. brings her claim reads: "The term 'case review system' means a procedure for assuring that [] each child has a case plan designed to achieve placement in a safe setting that is the least restrictive (most family like) and most appropriate setting available and in close proximity to the parents' home, consistent with the best interest and special needs of the child." 42 U.S.C. § 675(5)(A). It is noteworthy that Section 675(5) speaks of "assuring" certain elements of a case plan. Additionally, Section 671(a)(16) references Section 675(1) as "defining" a class plan but references Section 675(5) as containing "requirements." *See* 42 U.S.C. § 671(a)(16). Both these facts suggest that the language of Section 675(5) creates a binding obligation, thereby satisfying the second prong of the *Blessing* test. Moreover, this section passes the first and third prongs of the test since it targets foster children and requires placement to meet criteria that are not too "vague or amorphous." Therefore, S.M. has a right to a case plan "designed to achieve placement in a safe setting that is the least restrictive (most family like) and most appropriate setting available . . . consistent with [her] best interest and special needs." *See* 42 U.S.C. § 675(5)(A).

4.     Section 671(a)(22)

Section 671(a)(22) is too vague and amorphous to enforce, even if Congress intended it to impose a binding obligation on municipalities. Section 671(a)(22) provides that a state shall "develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health of the children." 42 U.S.C. § 671(a)(22). A requirement that foster children's safety be protected coincides with the enforceable requirement in Section 675(5) as well as with the holding of *Marisol A.*, 929 F.

Supp. at 675. However, the additional requirement in Section 671(a)(22) that foster care provide "quality services" has the same problems of enforcement as Section 675(1). What constitutes a "quality" service is too fact-dependent and child-specific to enable judicial determination. The purported requirement of "quality services" is of equal specificity to the purported requirement that a "reasonable effort" be made to "preserve and reunify families." 42 U.S.C. § 671(a)(15)(B). Yet this subsection has been found not to create a right enforceable under Section 1983. *See Suter v. Artist M.* 503 U.S. 347, 363 (1992). Similarly, Section 671(a)(22) does not create a federal right, and so the claim under that section is dismissed.

\* \* \*

In sum, AACWA Sections 671(a)(16) and 675(5) create federal rights under the *Blessing* test. Therefore, S.M. has a right to the creation of a case plan, and that plan must be "consistent with [her] best interest and special needs."[3] In contrast, AACWA Sections 675(1) and

---

[3] At this stage it would be inappropriate to consider Defendants' arguments that S.M.'s placement at Euphrasian *was* consistent with her interests. In support of their contention, Defendants cite S.M.'s New York Family Court proceeding (noting S.M.'s suicidal ideation, (*see* Dkt. No. 17-3)) and a social worker's case report (stating that it was S.M.'s father, not Defendants, who kept her from returning to school (*see* Dkt. No. 28-1)). However, at the motion to dismiss stage, courts may consider "only the facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Thomas v. Goord*, 215 Fed. App'x. 51, 52 (2d Cir. 2007) (quotations omitted). Judicial notice may be taken of "a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be determined from sources whose accuracy cannot reasonably be questioned." *See Faulkner v. Verizon Commc'n, Inc.*, 156 F. Supp. 2d 384, 391 (S.D.N.Y. 2001) (quotations omitted). While the Court may take notice of the *existence* of other court proceedings in a case, *see Staehr v. Hartford Fin. Serv. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008), it may not take judicial notice of that proceeding for the truth of the matters asserted therein, *Frigerio v. United States,* No. 10 Civ. 9086, 2011 WL 3163330, at \*6 (S.D.N.Y. July 22, 2011). Given such standards, it would be improper for this Court to consider allegations about S.M.'s father: they are not in the complaint, nor generally known, nor unquestionable. It would also be improper to consider allegations about S.M.'s suicidal ideation, since Defendants refer to the factual findings of another court proceeding.

671(a)(22) do not grant S.M. federal rights under *Blessing*. Consequently, claims under these two sections are dismissed.[4]

### G.    Supplemental Jurisdiction Over S.M.'s State Law Claims

When a federal court has original jurisdiction over some claims, it also "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims are part of the same case or controversy when they arise out of a "common nucleus of operative fact." *Briarpatch Ltd., v. Phoenix Pictures, Inc.,* 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks omitted). Here, the Court has original jurisdiction over several viable Section 1983 claims. Additionally, S.M.'s state claims relate to the same facts as her federal claims. Indeed, she contends that her state right to appropriate placement was violated by her long stay at Euphrasian and the hardship she alleges she suffered there. Based on these findings, the Court concludes that supplemental jurisdiction over S.M.'s state-law claims is proper.

In the alternative, Defendants argue that S.M.'s state claims should be dismissed on their merits. The Defendants' arguments are unavailing: For the same reasons that S.M. has asserted viable claims under AACWA, she has asserted viable claims under New York state laws very similar to AACWA.[5] S.M. seeks to enforce 18 NYCRR §§ 430.11(d)(1) and 430.11(c)(1)(i) against New York and Good Shepherd. Section 430.11(d)(1) requires a foster child to be placed in the "least restrictive and most homelike setting in which the child can be maintained safely."

---

[4] The Court's analysis of which AACWA sections create federal rights closely mirrors the thorough study undertaken by Judge Swain in *Eliza W. ex rel Barricelli*, 2016 WL 4750178.

[5] The New York test for whether a statute creates a privately enforceable right is composed of essentially the same three factors as the *Blessing* test. *See Mark G. v. Sabol*, 93 N.Y.2d 710, 719 (1999).

15

The state statute's language is similar to the AACWA Section 675(5) requirement that case plans achieve "safe" placement in the "least restrictive (most family like)" setting available.  Likewise, the language of 18 NYCRR Section 430.11(c)(1)(i) lays out a requirement echoing AACWA Section 675(5).  The New York law states that "[w]henever possible, a child shall be placed in a foster care setting which permits the child to retain contact with the persons, groups and institutions with which the child was involved."  This statute appears to impose a standard that is similar to AACWA Section 675(5)'s requirement of a "family like" setting.  The federal and New York statutes are sufficiently similar such that the Court's previous analysis regarding AACWA applies with equal force here.  S.M.'s state-law claims survive the motion to dismiss.

Additionally, S.M. brings a common law claim for negligent placement and supervision, which Defendants assert is either an impermissible challenge to their broad authority to make placements or too scantly plead.  The Court disagrees for reasons largely already discussed.  S.M.'s challenge is to how she was treated while at Euphrasian — she is not challenging Defendants' (or the Family Court's) authority to send her to Euphrasian in the first place.  Moreover, at the motion to dismiss stage, S.M. need not present particularly developed allegations.  For these reasons, the negligent placement and supervision claims may proceed as well.

## IV. Conclusion

For the foregoing reasons, the City of New York and Good Shepherd's motions to dismiss are GRANTED with respect to the claims under 42 U.S.C. §§ 675(1) and 671(a)(22).  In all other respects, Defendants' motions are DENIED.

Defendants shall file answers to the remaining claims within 21 days after the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Numbers 16 and 20.

SO ORDERED.

Dated: July 26, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge