# EXHIBIT D

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Jenny Lee
To Call Writer Directly:
+1 212 390 4623
jenny.lee@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

December 23, 2021

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
General Corporation Counsel
of the City of New York
100 Church Street
New York, NY 10007
mtoews@law.nyc.gov
wngo@law.nyc.gov

Re:   *S.M., a minor, v. The City of New York and Good Shepherd Services*,
      Docket No.:  20-cv-05164 (JPO)

Counsel:

We write on behalf of Plaintiff S.M. regarding The City of New York's ("the City") Responses and Objections to Plaintiff's Discovery Requests, received on November 24, 2021 but dated November 22, 2021, and document productions received on November 24, 2021 and December 2, 2021 (CITY DEFS000001-CITY DEFS000576) (the "Production"). As detailed below, the City's Responses and Objections and Production are deficient in numerous respects.[1]

These deficiencies are even more troubling in view of the City's failure, to date, to meet a single discovery deadline in this case. For starters, the City's Federal Rule of Civil Procedure 26(a)(1) Disclosures (the "Initial Disclosures") were due October 20, 2021. On October 22, 2021—two days after the deadline—you indicated that the City would not provide its Initial Disclosures for another week. Despite our repeated requests for the City to serve its initial disclosures promptly and without further delay, we did not receive the City's Initial Disclosures until November 29, 2021, over a month after they were due.

---

[1] All terms in this letter, whether capitalized or not, have the same meaning as defined in the Plaintiff's First Set of Requests for Production or Plaintiff's First Interrogatories.

**KIRKLAND & ELLIS LLP**

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
December 23, 2021
Page 2

      Then, three days before the City's Responses and Objections to Plaintiff's First Requests for Production and First Interrogatories were due, on November 12, 2021, you requested a three-week extension to respond. In the spirit of compromise, we agreed to extend the deadline to respond to Plaintiff's First Requests for Production and First Interrogatories to November 22, 2021. Despite that extension, on November 22, 2021, you requested a second extension to November 24, 2021. We did not oppose the request but reiterated the importance of receiving the City's Responses and Objections as soon as possible. On November 24, 2021, over a month after the original deadline, the City at last served its (delinquent) Responses and Objections to Plaintiff's Discovery Requests, which were backdated to November 22, 2021. Plaintiff did not receive the entirety of the City's meager production, some of which is non-responsive to Plaintiff's First Requests for Production, until eight weeks after the Requests were served.

      Plaintiff reserves all rights to seek judicial intervention in the event the City fails to cure all deficiencies identified herein promptly. Plaintiff also reserves all rights with respect to any other deficiencies Plaintiff may identify.

**REQUESTS FOR PRODUCTION**

      The City appears to have declined to produce discoverable documents and/or raised facially improper objections to Plaintiff's First Requests for Production, dated October 15, 2021 (the "RFPs"). For each RFP identified below, Plaintiff has stated some of the principal reasons that the City's responses or objections, and as relevant, the Production, are deficient. For each RFP—including RFPs not specifically addressed in this letter—Plaintiff requests that the City answer either by providing the anticipated timetable for production of missing Documents, or confirming that the City intends to withhold Documents (and identify the specific objection on which the City intends to rely or other grounds for withholding):

      **RFP Nos. 5, 6, 7, 8, 9, 10, 11, and 21:**

      RFP No. 5 seeks non-privileged documents relating to S.M.'s family court case. RFP Nos. 6, 7, 8, 9, 10, and 21 seek documents relating to ACS and/or the Children's Center's policies and/or procedures concerning the intake and/or transfer of children housed at the Children's Center (RFP Nos. 6, 9); criteria for assigning children in ACS custody to Rapid Intervention Centers and other lockdown facilities (RFP No. 7); overcrowding at the Children's Center, including as reported by NBC4 in March 2019, (RFP No. 8); and the identification and selection of placements for children at the Children's Center (RFP Nos. 10, 21). RFP No. 21 also requests documents relating to the availability and demand of therapeutic foster homes.

## KIRKLAND & ELLIS LLP

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
December 23, 2021
Page 3

RFP No. 11 seeks documents relating to ACS's engagement of Good Shepherd to provide foster care services, including any inspection records, complaints, or grievances related to Euphrasian.

The City objected to each of these RFPs on the basis that they are "overly broad in scope and time." Those "boilerplate objections" concerning overbreadth are not proper objections. *Fischer v. Forrest*, Nos. 14 Civ. 1304 (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (concluding that objections that discovery requests were, *inter alia*, "overly broad" were "meaningless boilerplate" and failed to "comply with" the relevant Federal Rules of Civil Procedure). The relevant time period for the RFPs—January 1, 2019 to July 6, 2020—is narrowly tailored to encompass responsive documents in existence while Plaintiff was in ACS's care. And the policies and procedures sought by RFP Nos. 8, 9, 10, 11, and 21 are unquestionably directly relevant to Plaintiffs' claims.

The City also objected to RFP Nos. 5, 8, 10, 11, and 21 on the basis that they supposedly "seek[] information that may not be in possession of an individual or entity that is an employee, agency, or division of the City" and that they "seek[] records maintained by agencies other than ACS." The City's position that the documents sought by RFP Nos. 5, 8, 10, 11, and 21, including documents regarding S.M.'s family court case, the Children's Center, the identification and selection of placements for children in ACS custody, criteria for assigning children in ACS custody to therapeutic foster homes, and ACS's engagement of Good Shepherd Services to provide foster care services, "may not" be in the City's or ACS's possession strains credulity. And. in any event, the City is obligated to investigate whether any responsive documents exist and, to the extent that responsive documents are in its possession, produce those documents or provide Plaintiff with the full names, employer, title, and contact information of each individual or entity who has possession, custody, or control of responsive documents.

The City further objected to RFP No. 21 on the basis that "it is unduly burdensome as searching for and producing records relating to the availability and demand for therapeutic foster homes would require an exhaustive effort." Despite that objection, the City agreed to produce "any and all records relating to the criteria for placement in a therapeutic foster home." No such records have been produced.

Notwithstanding its improper objections, the City committed to produce responsive documents, as follows:

- RFP No. 5:   "[R]esponsive documents."
- RFP No. 6:   "[R]esponsive documents, including any and all applicable intake, transfer, and placement policies."
- RFP No. 7:   "[R]esponsive documents."

**KIRKLAND & ELLIS LLP**

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
December 23, 2021
Page 4

- RFP No. 8:   "[R]esponsive documents."
- RFP No. 9:   "[R]esponsive documents."
- RFP No. 10: "[R]esponsive documents."
- RFP No. 11: "[R]esponsive documents."
- RFP No. 21: "[R]esponsive documents."

The City has not, however, produced a single document responsive to RFP Nos. 5, 6, 7, 8, 9, 10, 11, or 21.  Please confirm that the City will search for and produce non-privileged documents responsive to those RFPs. Additionally, please provide the City's proposed methodology for searching for documents and an anticipated timetable for production. To the extent the City is or becomes aware of responsive documents that are not in its possession, custody, or control, please provide the full names, employer, title, and contact information of each individual or entity who has possession, custody, or control of such responsive documents.

### RFP Nos. 1, 2, 3, 12, 13, 14, 15, 17, 18, 19, 20, 22:[2]

The City's objections and abject failure to produce every document responsive to each of these RFPs—all of which request documents relating to S.M.'s time in ACS custody—are baseless.  RFP Nos. 1, 2, and 3 seek documents relating to S.M. (RFP No. 1), including documents concerning S.M.'s education (RFP No. 2) and your communications with S.M. and/or S.M.'s relatives (RFP No. 3).  RFP Nos. 12, 13, 14, and 15 seek documents relating to S.M.'s intake and stay at the Children's Center in or around February 2019 and April 2019.  RFP Nos. 17 and 18 seek documents relating to the decision to transfer S.M. from the Children's Center to Euphrasian and/or her subsequent transfer to Euphrasian (RFP No. 17) and the decision to transfer S.M. to a therapeutic foster home and/or her subsequent transfer to a therapeutic foster home (RFP No. 18).  RFP Nos. 19 and 20 seek documents relating to your communications with S.M.'s relatives regarding S.M.'s placement in Euphrasian and/or a therapeutic foster home (RFP. No. 19) and your communications with Good Shepherd Services concerning S.M. (RFP No. 20).  RFP No. 22 seeks documents relating to the identification and selection of a therapeutic foster home placement for S.M.

The City objected to each of these RFPs as "overly broad in scope and time" or "overly broad in scope."  The City's objection that RFP Nos. 1, 2, 3, 19, 20, and 22 are overly broad in time is undermined by its failure to object to RFP Nos. 12, 13, 14, 15, 17, and 18 on that ground.  That is because all of the RFPs share the same relevant time period—January 1, 2019 to

---

[2]   The City's responses and objections to RFP No. 22 refer to RFP No. 21.  Although Plaintiff reserves all rights, for the purpose of this letter, Plaintiff assumes that the City intended to refer to RFP No. 22.

# KIRKLAND & ELLIS LLP

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
December 23, 2021
Page 5

July 6, 2020. Additionally, as discussed above, boilerplate overbreadth objections are improper. *See Fischer*, 2017 WL 773694, at *3.

The City also objected to each of these RFPs on the basis that they supposedly "seek[] information that may not be in possession of an individual or entity that is an employee, agency, or division of the City." Again, this objection is simply not credible. S.M. was a child in ACS's custody; it should be the bare minimum to expect the City to have possession of documents related to S.M.'s education while in ACS custody, S.M.'s time in the Children's Center, and S.M.'s placement in Euphrasian and therapeutic foster homes. To the extent the City is aware or becomes aware of responsive documents that are not in its possession, custody, or control, please provide the full names, employer, title, and contact information of each individual or entity who has possession, custody, or control of such responsive documents.

The City further objected to RFP Nos. 2, 19, and 20 on the basis that "it is unduly burdensome as searching for and producing all documents (phone logs, e-mail chains, fax cover sheets, letters, text messages, etc.) reflecting communications of this nature would require an exhaustive effort." The City agreed to "conduct[] a search for and review[] the responsive documents and will supplement [the responses] within (30) days should such records become available." We believe it would be helpful for the parties to meet and confer regarding the City's proposed search methodology for communications. The case notes comprising that majority of the City's Production, which memorialize some communications responsive to the RFPs, confirm that communications responsive to the RFPs exist. Nevertheless, neither the responsive communications referenced in the case notes, nor any other responsive documents have been produced.

Additionally, the City objected to RFP Nos. 12, 13, 14, 15, and 17 on the basis that they "call[] for the production of material that is confidential and is protected from disclosure." In view of the Stipulation and Protective Order entered in this Action (ECF No. 58), the City has no justification for completely withholding confidential material. Moreover, the City has already produced documents containing highly sensitive information (and, as discussed below, has failed to mark those documents "Confidential" as required by the Protective Order). Please provide an explanation for the basis for this purported protection from disclosure (including to which RFP the document is responsive) and specify any releases or permissions required and the individual or entity those releases or permissions are required from to produce the document.

Finally, the City objected to RFP No. 3 on the basis that it "requests the production of confidential documents, namely, education records, as protected under the Family Educational Rights and Privacy Act (FERPA)." Without conceding that any documents responsive to RFP No. 3 are protected from disclosure under FERPA, Plaintiff is available to meet and confer

## KIRKLAND & ELLIS LLP

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
December 23, 2021
Page 6

regarding provision of a FERPA-compliant release. Please confirm that the City will produce documents to RFP No. 3 upon receipt of a FERPA-compliant release.

Although the City has produced case notes that are responsive in certain respects to the RFP Nos. 1, 2, 3, 12, 13, 14, 15, 17, 18, 19, 20, and 22, it has not produced any other responsive documents. Please confirm that the City will search for and produce all non-privileged documents responsive to those RFPs. Additionally, please provide the City's proposed methodology for searching for documents and an anticipated timetable for production.

### RFP No. 16:

RFP No. 16 seeks documents relating to the Children's Center occupancy limits and the number of children housed at the Children's Center during the Relevant Time Period.

The City objected to RFP No. 16 on the basis that "it is overly broad in scope and time" and "to the extent it seeks information that may not be in the possession of an individual or entity that is an employee or agency, or division of the City" or "seeks records maintained by agencies other than ACS."

Although the City produced a photograph of a document that purports to be the Children's Center Operating Certificate issued in June 2019 and the ACS Children's Center Monthly Status Update for the month of October 2021, it has not produced responsive documents for the entire Relevant Time Period—January 1, 2019 to July 6, 2020. Indeed, the ACS Children's Center Monthly Status Update produced is clearly outside the Relevant Time Period, but it does confirm the existence of such reports, which appear to be created and maintained in the ordinary course, and therefore should present little burden to collect and produce. Please confirm that the City will search for and produce all non-privileged documents responsive to RFP No. 16, including all versions of the Children's Center Operating Certificate and the ACS Children's Center Monthly Status Update for the Relevant Time Period. Additionally, please provide the City's proposed methodology for searching for documents and an anticipated timetable for production.

### RFP No. 4:

RFP No. 4 seeks all police records involving S.M., including missing persons reports.

The City objected to RFP No. 4 with the boilerplate response that "it is overly broad in scope and time." As discussed above, this is an insufficient ground for resisting discovery. *See Fischer*, 2017 WL 773694, at *3. The City also objected to RFP No. 4 on the basis that it is not

**KIRKLAND & ELLIS LLP**

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
December 23, 2021
Page 7

"reasonably calculated to lead to the discovery of admissible evidence." That is not the relevant standard under the Federal Rules of Civil Procedure. Rather, "[t]he test . . . is whether evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to admissible evidence.'" *Id.* The documents sought by RFP No. 4 are directly relevant to the City's placement decisions with respect to S.M., S.M.'s experience in Euphrasian, and the suitability of Euphrasian as placement for S.M. The City further objected to RFP No. 4 "to the extent that it seeks information that may not be in the possession of an individual or entity that is an employee, agency, or division of the City" and "to the extent that it seeks records maintained by agencies other than ACS." The New York City Police Department, however, is the primary law enforcement agency of The City of New York.[3] Please confirm that the City will produce all documents responsive to RFP No. 4, or else advise Plaintiff of the agency with the authority to produce such records. To the extent the City is or becomes aware of responsive documents that are not in its possession, custody, or control, please provide the full names, employer, title, and contact information of each individual or entity who has possession, custody, or control of such responsive documents.

### **Failure to Comply With the Stipulation and Protective Order:**

In addition to the substantive deficiencies identified above, the City's Production does not comply with the Stipulation and Protective Order. The Stipulation and Protective Order provides that the "[p]arties shall designate materials as 'Confidential Materials' by placing or affixing the word 'CONFIDENTIAL' on each page containing such material in a manner which will not interfere with its legibility." *See* ECF No. 58 at 3. Although some of the documents in the Production appear to contain the word "confidential," the City has failed to mark any Confidential Materials in its production "CONFIDENTIAL" pursuant to the terms of the Stipulation and Protective Order.

The City has also failed to consistently redact personally identifying information. For example, neither S.M.'s name, nor her father's name is redacted in multiple documents. *See, e.g.*, CITY DEFS000038, CITY DEFS000040, CITY DEFS000168, CITY DEFS000311. Please confirm that the City will immediately remedy any and all failures to comply with the Stipulation

---

[3]  *See NYC Organizational Chart*, New York City Office of the Mayor, https://www1.nyc.gov/office-of-the-mayor/org-chart.page (showing the New York City Police Department is an agency of the City); *see also About NYPD*, New York City Police Department, https://www1.nyc.gov/site/nypd/about/about-nypd/about-nypd-landing.page ("The New York City Police Department (NYPD) is the largest and one of the oldest municipal police departments in the United States. . . . The NYPD was established in 1845, and today, is responsible for policing an 8.5-million-person city.").

## KIRKLAND & ELLIS LLP

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
December 23, 2021
Page 8

and Protective Order and reissue the Production. Additionally, please provide an anticipated timetable for reissuing the Production.

### INTERROGATORIES

The City's responses to Plaintiff's First Interrogatories (the "Interrogatories"), dated October 15, 2021 are inadequate. Additionally, many of its objections to the Interrogatories are facially improper. The deficiencies noted below are not exhaustive and are raised without prejudice to Plaintiff's right to raise additional issues in the future. For each Interrogatory—including Interrogatories not specifically addressed in this letter—Plaintiff requests that the City answer either by providing a complete response and/or the anticipated timetable for provision of a complete response or by stating that the City intends to withhold a complete response (and identify the specific objection on which the City intends to rely):

**Interrogatory Nos. 1, 2, 3, 4, 6, 7, 8, 9, and 10:**

Interrogatory No. 1 asks the City to identify each person likely to have information, along with the subjects of that information, concerning S.M.'s or the Defendants' claims or defenses in this Action. Interrogatory Nos. 2, 3, 4, 6, 7, 8, 9 and 10 ask the City to identify "all ACS employees, contractors, temporary employees, and or volunteers" who have interacted with or had any contact with S.M. (Interrogatory No. 2), interacted with or had any contact with S.M. at the Children's Center (Interrogatory No. 4), served as S.M.'s case worker (Interrogatory No. 6), had responsibility or authority to make decisions, assess, evaluate, or provide advice with respect to S.M.'s placement in Euphrasian and/or transfer out of Euphrasian (Interrogatory Nos. 7, 8), and were responsible for conducting any psychological assessment of S.M. or otherwise evaluating S.M.'s mental health (Interrogatory No. 10).

The City objected to Interrogatory Nos. 1, 2, 3, 4, 6, 7, 8, 9, and 10 on the basis that they are "overly broad in scope and time." Again, that boilerplate objection is improper. *See Fischer*, 2017 WL 773694, at *3. The City also objected to the Interrogatories on the basis that they "seek[] information that may not be in possession of an individual or entity that is an employee, agency, or division of the City." To be clear, Interrogatory No. 1 requests the identity of "each Person likely to have information" and Interrogatory Nos. 2, 3, 4, 6, 7, 8, 9, and 10 request the identity of certain "ACS employees, contractors, temporary employees, and/or volunteers"—it is hard to contemplate how the *identity*, to the extent known, is not within the City's possession, further underscoring the improper boilerplate nature of the City's objections.

The City's sole response to Interrogatory Nos. 1, 2, 3, 4, 6, 7, 8, 9, and 10 "refers Plaintiff to the City's Rule 26 Disclosures." But the City's Initial Disclosures identify only five people

**KIRKLAND & ELLIS LLP**

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
December 23, 2021
Page 9

(two of whom are S.M. and her father) and *only one* ACS employee—Raven Herbert. Even a cursory review of the City's own barebones production demonstrates that a complete response to Interrogatory No. 1 will include more than the five people listed and complete responses to Interrogatory Nos. 2, 3, 4, 6, 7. 8, 9, and 10 will include more than Raven Herbert. A complete response to Interrogatory No. 1 will also include the subjects of the information each person is likely to possess. Please confirm that the City will provide complete responses to Interrogatory Nos. 1, 2, 3, 4, 6, 7, 8, 9, and 10 and the City's timetable for responding.

### **Interrogatory No. 11:**[4]

Interrogatory No. 11 asks for the identity of "all ACS employees, contractors, temporary employees, and/or volunteers" who had responsibility or the authority to make decisions, assess, evaluate, or provide advice with respect to S.M.'s education.

The City objected to Interrogatory No. 11 on the basis that it is "overly broad in scope and time," "seeks information that may not be in the possession of an individual or entity that is an employee, agency, or division of the City," and "seeks records maintained by agencies other than ACS." Those objections fail on their face for the same reasons that the City's objections to Interrogatory Nos. 1, 2, 3, 4, 6, 7, 8, 9, and 10 fail. Moreover, the improper boilerplate nature of the City's objections is further underscored by its objection that *Interrogatory* No. 11, which requests the identity of certain ACS employees, contractors, temporary, employees, and/or volunteers "seeks *records* maintained by agencies other than ACS" (emphasis added). Nevertheless, the City agreed to "search[] whether the information regarding ACS employees, contractors, temporary employees, and/or volunteers who had any responsibility or authority to make decisions, assess, evaluate, or provide advice with respect to Plaintiff's education is in its care, custody, and control and will supplement this response within thirty (30) days should such information become available." Please confirm that the City will provide a complete response to Interrogatory No. 11 and the City's timetable for responding.

---

[4] The City's responses and objections to Interrogatory No. 11 refer to Interrogatory Nos. 5 and 10. Although Plaintiff reserves all rights, for the purpose of this letter, Plaintiff assumes that the City intended to respond to Interrogatory No. 11.

## KIRKLAND & ELLIS LLP

Mr. Mark Toews, Esq.
Ms. Wynee Ngo, Esq.
December 23, 2021
Page 10

*   *   *

These issues jeopardize the parties' ability to comply with the Court's schedule for discovery. Please let us know as soon as possible when you will provide a written response to this letter or, in the alternative, when you are available to meet and confer. We look forward to your prompt response.

Sincerely,

*/s/ Jenny Lee*
Jenny Lee


cc:     All Counsel of Record (via email)