UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

S.M., *by her next friend*, ALISON KING,
                            Plaintiff,

-v-

CITY OF NEW YORK, *et al.*
                            Defendants.

20-CV-5164 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

This case concerns the standing of Alison King to serve as "next friend" for an infant seeking judicial review of abuses allegedly suffered in New York City's foster care system under Federal Rule of Civil Procedure 17. One of the Defendants in this action, Good Shepherd Services, has moved to dismiss for lack of standing as next friend under Federal Rules 12(b)(1) and 17(c). For the reasons that follow, the motion to dismiss is denied.

## I.   Background

The following is drawn from the Amended Complaint and documents deemed incorporated by reference or of which the Court takes judicial notice. (*See* ECF No. 43.)

S.M., by her next friend, Alison King, initiated suit against New York City (the "City") and Good Shepherd Services ("Good Shepherd") (collectively, "Defendants"), alleging federal and state statutory violations as well as federal constitutional violations related to S.M.'s state-ordered residence at Euphrasian Residence ("Euphrasian"), a lockdown facility, causing S.M., still a minor child as of July 2022, serious and long-lasting physical and psychological injuries. (ECF No. 25 ¶¶ 37, 39.) Euphrasian was owned by private Defendant Good Shepherd, which contracted with the city to house foster children there. (ECF No. 25 ¶ 10.) S.M. was placed there in 2019, after City authorities formally removed her from the physical custody of her legal

1

guardian and natural father, I.M.  (ECF No. 25 ¶¶ 23 – 28.)  Although I.M. no longer had physical custody, he remained S.M.'s formal legal guardian during her confinement.  (*Id.*)

In 2020, when Plaintiff commenced this suit under 28 U.S.C. § 1983 and parallel New York state laws, S.M. was still confined at Euphrasian.  (*See* ECF No. 1.)  In 2019, prior to commencement of this case, in connection with a possible pro bono representation of S.M., lawyers from Kirkland & Ellis ("Kirkland") reached out to I.M. to inquire whether he would be willing to serve as "next friend" and litigate on behalf of his daughter in a suit challenging as unconstitutional the conditions of her confinement.  I.M. declined.  (ECF No. 101-1.)  Kirkland then located Alison King, then a pro bono attorney practicing at Arnold & Porter, to serve as next friend.  Kirkland attorneys introduced King and S.M. and pleaded King as S.M.'s next friend in both their Complaint and Amended Complaint.  (*See* ECF Nos. 1, 25.)

In June 2022, Good Shepherd filed a letter requesting a conference in anticipation of filing a motion under Federal Rule 12(c) arguing that S.M.'s claims were subject to dismissal for lack of standing under Federal Rule 12(b)(1).  First, Good Shepherd argued that because S.M. had actually been released from Good Shepherd's custody and now was back living with her father, she could no longer permissibly rely on Federal Rule 17(c)(2) to have a non-familial next friend bring her action, especially because I.M.'s June 2022 deposition indicated that he would now be willing to serve as his daughter's next friend in this case.  (ECF No. 85, at 2.)  Second, Good Shepherd argues that because King had accepted a job as an attorney at Kirkland since being named as next friend, she could no longer serve as next friend in an action also litigated by Kirkland attorneys, because there could be a conflict of interest between the client's interests and those of the lawyers.  While Kirkland was litigating this case on a purely pro bono basis, Good Shepherd argued that Kirkland was "seeking attorney's fees," creating a conflict of interest.  (*Id.*)

2

Good Shepherd argues that because there had been no order appointing King as next friend, standing is procedurally deficient. (*Id.*) King does not bill her time serving as next friend and is not subject to any compensation incentives based on this case's outcome. (ECF No. 99, at 4.) King has maintained consistent contact with S.M., and both S.M. and her father I.M. have expressed consistent preference for King to stay on as S.M.'s next friend. (ECF Nos. 89, 90-1, 99-1.)

The Court held a telephone conference on July 11, 2022. There, the Court clarified the parties' positions and stated that it welcomed additional briefing on this issue, while staying discovery. (*See* ECF No. 107.) Both Plaintiff and Good Shepherd submitted additional materials; the City did not. (*See* ECF Nos. 101, 104.) At the conference, Good Shepherd maintained its position: Rule 17, though it grants courts wide authority to appoint next friends in cases where infants under a disability seek to vindicate their rights, does not authorize King to serve as next friend under the circumstances here, and therefore standing is lacking.

**II.    Legal Standard**

Because the parties agree that capacity to sue is not at issue in this litigation, this case turns on interpreting of Federal Rule of Civil Procedure 17(c), which states:

> (c) MINOR OR INCOMPETENT PERSON.
>
> > (1) *With a Representative*. The following representatives may sue or defend on behalf of a minor or an incompetent person:
> >
> > > (A) a general guardian;
> > >
> > > (B) a committee;
> > >
> > > (C) a conservator; or
> > >
> > > (D) a like fiduciary.

> (2) *Without a Representative*. A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian *ad litem*. The court must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

FED. R. CIV. P. 17(c).

### III.  Discussion

#### A.  King's Next Friend Standing at Commencement of Litigation

This case was filed in 2020, when S.M. had been removed from her father's custody by New York authorities and was residing at Euphrasian.  At that time, King served as pro bono counsel at Arnold & Porter and lacked a connection to Kirkland.  (*See* ECF Nos. 101-1; 101-2.)

Defendant argues that King lacked standing to serve as next friend to S.M. at any time, including when this case was commenced, because S.M. remained formally subject to I.M.'s legal guardianship, even when she was taken from his care by New York state and placed into the foster system, so only I.M. could sue on S.M.'s behalf.  Specifically, Good Shepherd argues that because subpart (1) of the Rule includes "general guardians" as a way that an infant might be "with representation," the language of subpart (2) permitting litigation by next friend is not applicable because S.M. was never "without a representative" and so S.M. was never within subpart (2) at all, and never warranted next friend standing.  (ECF No. 85, at 2.)

This argument is wrong about Rule 17 for three reasons.  First, it ignores a difference between subparts (1) and (2) as articulated by the Second Circuit.  Contrary to Good Shepherd's reading, the Second Circuit emphasizes the breadth and discretionary powers enshrined by Rule 17(c).  It has stated, for example, that "Rule 17(c) has always been viewed as permissive . . . . [The Rule] gives a federal court power to authorize someone other than a lawful representative to sue on behalf of an infant . . . where that representative us *unable, unwilling, or refuses to act or*

4

*has interests which conflict with those of the infant . . . ."* Ad Hoc Committee of Concerned Teachers on Behalf of Minor and Under-Age Students Attending Greenburgh Eleven Union Free School District v. Greenburgh #11 Union Free School District*, 873 F.2d 25, 29 (2d Cir. 1989) (hereinafter "*Greenburgh*") (emphasis added).  The *Greenburgh* court further explained its textual basis for an especially broad reading of the Rule in the following way:

> Under the second sentence of subdivision (c), an infant . . . who does not have a duly appointed representative may sue by his next friend . . . . Even though the infant . . . has a general representative, if the representative is unable or refuses to act or [their] interests conflict with the person represented, the infant . . . may sue in federal court by his next friend. . . . Courts have always had the power to appoint special representatives under such circumstances, and this power should be considered retained by the federal court in Rule 17(c).

*Id.* at 30 (quoting 3A J. Moore & J. Lucas, *Moore's Federal Practice*, at 17—212—213 (2d ed. 1987)).  That court made clear that "[f]ederal courts in the Southern District of New York . . . have *repeatedly affirmed a court's power* to determine that the interests of a child . . . will be best represented by a next friend . . . and not by an authorized representative such as a parent . . . ." *Id.* (emphasis added) (internal citations omitted).

Second, I.M. was not an adequate general representative for Rule 17 purposes at the time of filing.  He was made aware of the claims by Kirkland, and, in the language of *Greenburgh*, "refused" to represent his daughter due to his qualms about his time availability and not wanting to be drawn back into family court proceedings for personal reasons.  He did not object to Kirkland representing his daughter in 2019.  *See id.* at 30 – 31.  Here, then, the mere "existence of relatives of [a] minor child[]" does "not preclude [a] federal court from appointing other individuals as next friends to represent the minor children[] . . . challenging the constitutionality of the foster-care system, when the . . . relatives did not move to represent them in federal court" and "there was no showing that the relatives were willing or able to represent them."  6A C. A.

5

Wright & A. Miller, *Federal Practice and Procedure*, § 1570, n. 4 (2022 ed.) (citing *Sam M. ex rel. Elliot v. Carcieri*, 608 F.3d 77 (1st Cir. 2010)).

Third, I.M. lacked the capacity to sue on behalf of S.M. at the time that the suit was filed because his daughter had been removed from his custody and deemed a ward of the State's foster care system when the case was initiated. Courts have consistently rejected "the argument that there may be close family . . . who knows the named plaintiffs and would be better suited to represent them" where a state authority, like New York's Administration for Children's Services ("ACS") "ha[d] taken the named plaintiffs into custody." *Marisol v. Giuliani*, 1998 WL 265123, at *9 (S.D.N.Y. May 22, 1998). His status would not factor into next friend analysis.

Finally, contrary to Good Shepherd's suggestions and out-of-circuit citations, the Court rejects the argument that King lacks standing because King "never even knew S.M. before" being recruited to serve as next friend in this case. (ECF No. 85, at 2.) There are "no special requirements for the person suing as next friend" under established circuit law, and there are cases here in which a court "permitted the action to proceed even though that individual had been found by the attorneys conducting the litigation and had not known the children prior to the suit." 6 C. A. Wright & A. Miller, *Federal Practice and Procedure* § 1572 (2022 ed.). Courts recognize that while it would be generally preferable for the next friend to have a preexisting relationship with the minor party at interest, that is not a requirement, especially where, as here, the child is in foster care and there is no obvious other adult to whom they can turn. In a situation directly paralleling this one, a court permitted a next friend located by the plaintiff's law firm specifically for the purposes of that specific litigation to serve as next friend. *See Child v. Beame*, 412 F. Supp. 593 (S.D.N.Y. 1976). And while the Second Circuit did not review *Child*, it has since cited it as a proper and correct application of Rule 17. *See Greenburgh*, 873

6

F.2d at 30.  Under federal law, it is not required that a next friend go through a formal process of judicial appointment or certification; the Rule textually requires this of guardians *ad litem*, but contains no parallel provision with regard to next friends.  *See Till v. Hartford Acc. & Indem. Co.,* 124 F.2d 405, 408 (10th Cir. 1941) (holding that where a court never appointed next friends for minors but their next friends from a separate state court proceeding were joined and did in fact litigate on their behalf, there was no error and no requirement of appointment because while there was "little distinction between a next friend and a guardian *ad litem*"; the one relevant distinction is that a "guardian *ad litem* is a special guardian, appointed by the court to defend in behalf of an infant party," while a "next friend is one who, without being regularly appointed guardian, represents an infant plaintiff").

The Court concludes that King had standing to serve as next friend as a third party genuinely and in good faith interested only in protecting the welfare and interests of S.M., a minor, in pursuing this case.  Except for the procedural ground that King needed to have a tie to S.M. preceding the litigation, Good Shepherd does not brief any other reason why her standing as next friend in 2020 would have been improper.  That argument fails.

   **B.   I.M.'s Next Friend Standing at Present**

Good Shepherd argues that even if I.M.'s legal guardianship status did not bar a non-familial next friend action at filing, it does now for two reasons.  First, I.M. indicated in his deposition that, although his preference is for King to stay on as next friend, he would be willing to be S.M.'s next friend, as of June 2022, and that he was available to do so.  Second, S.M. is now out of foster care and living with I.M.

Like this circuit's interpretation of the breadth of the conditions for appointment of next friend in a case involving an infant, this circuit's case law regarding who may be next friend is similarly permissive.  The Second Circuit has held that courts must

> follow the general rule that when an infant's authorized representative is unable, unwilling or refuses to act, or has interests which conflict with that of the infant, a court may appoint a "next friend" to ensure that the infant's rights are protected in a court of law.  To this we add that a court should consider the good faith of those claiming to speak for the infant and satisfy itself that the "next friend" is motivated by a sincere desire to seek justice on the infant's behalf.  In addition, a court should explore the ability of the "next friend"—financial or otherwise—to prosecute the type of action at hand. . . . [W]e [would not] approve of persons who, despite their good intentions, find themselves unable to finish what they start.  Since the facts and circumstances of each case will vary, a court should conduct an inquiry into . . . any adult . . . seeking to represent a child's interest as "next friend."

*Greenburgh*, 873 F.2d at 30 – 31.  In other words, if an infant's authorized representative parent is either (1) unwilling, unable, or refuses to bring suit in their name or (2) is willing to bring suit in their child's name, but has a conflict of interest, then a federal court should consider a next friend, especially in a foster care case.  In assessing the next friend, the court should assess that adult for (1) their good faith and whether they are motivated by anything but bringing justice to the infant party, and (2) the next friend's financial and logistical ability as well as experience litigating the kind of claim at issue.  Good Shepherd does not actually challenge King's standing on this basis.

If the above conditions are met, then the power of a court to permit litigation by next friend is broad:

> The term [next friend] is broad enough to include anyone who as an interest in the welfare of an infant who may have a grievance or a cause of action . . . .  The right of access to courts by those who feel they are aggrieved should not be curtailed; and this is particularly so in the instance of children who, rightly or wrongly, attribute such grievances to their very custodians.

*Id.* at 31 (quoting *Child*, 412 F. Supp. at 599); *von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284, 1293 (S.D.N.Y. 1986) ("Both federal and New York state courts have . . . affirmed

8

the power of the court to determine that the interests of a child . . . would be best represented not by a general representative, such as a parent or guardian, but by a . . . 'next friend.'").

"Although a minor is represented a priori by a general guardian, a court may in its discretion appoint a non-parent next friend as better serving the child's interest." *Doe v. Carnival Corp.*, 37 F. Supp. 3d 1254 (S.D. Fla. 2012) (citing *Bank of the United States v. Ritchie*, 33 U.S. 128, 144 (1834); *Devel. Disab. Advocacy Ctr., Inc. v. Melton*, 689 F.2d 281, 285 (1st Cir. 1982); *Gonzales ex rel. Gonzales v. Reno*, 86 F. Supp. 2d 1167, 1185 (S.D. Fla. 2000)); *see also Noe v. True*, 507 F.2d 9 (6th Cir. 1974) (where the interests of a child and her legal guardian were adverse, the child was "not otherwise represented" as stated in Rule 17(c)).

Here, Plaintiff sufficiently alleges that I.M. is subject to a potential conflict with respect to S.M. in this litigation, the second prong this circuit has recognized to trigger a court's Rule 17(c)(2) powers. "If the child's general representative has a conflict of interest . . . the child may . . . sue by another next friend." *T.W. by Enk v. Brophy*, 125 F.3d 893, 896 (7th Cir. 1997). This is especially so at the motion to dismiss stage of litigation where courts recognize that well-pleaded, plausible allegations of a conflict of interest between an infant are sufficient to sustain next friend standing. *See Hull by Hull v. United States*, 54 F.3d 1125 (10th Cir. 1995); *Adelmen on behalf of Adelman v. Graves*, 747 F.2d 986, 988 (5th Cir. 1984); *see also* 6 C. A. Wright & A. Miller, *Federal Practice and Procedure* § 1570, n. 4 (2022 ed.) (gathering cases); *cf. M.S. v. Wermers*, 557 F.2d 170, 176 (8th Cir. 1977) (same but for guardian *ad litem*).

Additionally, there is no indication of bad faith or malintent toward S.M. by I.M., but there are still reasons to be concerned about a conflict. First and foremost, Plaintiff adequately alleges that I.M. is deeply embroiled in the facts and circumstances leading up to S.M.'s confinement. Plaintiff alleges that this could result in I.M.'s being called as fact witness by the

City or Good Shepherd and testifying in a manner adverse to S.M., a concern which appears validated since Good Shepherd actually did subject I.M. to a fact deposition that sought information related to the facts of this litigation, including S.M.'s character traits, her removal from his place of living in 2019, and the treatment she received while in the custody of Defendants.  (*See* ECF No. 99, at 10.)  Other courts have found lesser conflict allegations sufficient to bar a parent from litigating as next friend for a child based on conflicts.  *See, e.g.*, *Enk*, 124 F.3d at 896.

        C.        **King's Next Friend Standing at Present**

                1.        **Consent by Natural Guardian**

Both in 2019 and June 2022, I.M., S.M.'s father, was contacted by Kirkland and given full notice of the claims in this case, and, at both times, clearly expressed a preference for King to serve as next friend.[1]  (*See* ECF Nos. 101-1, 101-2.)  Additionally, in a declaration filed with the Court, S.M. confirmed I.M.'s testimony and expressed a preference for King to remain in the case due to her unique abilities and experiences in the legal system, as well as her relative position of objectivity.  (*See* ECF 89-1.)  The cases cited by Good Shepherd on this point are thus readily distinguishable because in all of them, unlike here, the general guardian (the infant person's family member) opposed the lawsuit, while the non-parent next friend would have facilitated the litigation against the true guardian's wishes.[2]

---

[1] This was so even in June 2022, when I.M. said that, if necessary, he would involve himself, but he would still prefer King.  (*See* ECF No. 89-1.)

[2] *See Greenburgh*, 873 F.2d at 28 (explaining opposition by parents); *Melton*, 689 F.2d at 285 (explaining how legitimate guardians of mentally disabled residents of home opposed the suit); *Jacobs v. United States*, 2012 WL 591398, at *1 (S.D.N.Y. Feb. 22, 2012) (removing natural parent as party plaintiff in action because she seemed unqualified as a representative); *Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281, 285 (4th Cir. 1979) (holding that court's

Here, the opposite is true. More illustrative of how courts in this circuit have handled cases where an infant's representative exists and could litigate but consents to allow a next friend to stand is *von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284 (S.D.N.Y. 1986) (Walker, J.). In *Auersperg*, the children of the plaintiff, who was deceased, sought to litigate as next friend despite the existence of a "duly appointed" committee to act as her legal fiduciary for all matters concerning her estate. But that committee was fully aware of the litigation, kept abreast thereof, and agreed to be bound by its result — and, when the defendants raised their standing objection, the court distinguished this case from the cases cited by the Defendants here too:

> This is not a case where the committee has opposed the action. The committee expressly concluded that the action brought by plaintiffs as "next friends" could only redound to the benefit of the assets held by the committee. The committee has affirmatively and repeatedly taken a position in support of plaintiffs' suit as consistent with [decedent's] best interest and has expressed that . . . in two . . . letters.

*Id.* at 1294. The court held that this distinction was a sufficient ground on which to rest next friend standing without reaching the issue of conflicts. *See id.* at 1294 – 95 (describing the holdings as "separate and independent ground[s] for plaintiffs' standing as next friends"). *Auersperg* recognized that by receiving notice of the litigation and opting not to represent the disabled party, the plaintiff's general guardian, the committee, had in fact "acted in [her] best interests" because that committee "has. . . found, *at no cost*, a proxy to vigorously prosecute an action it supports and from which its ward can gain monetary benefit." *Id.* at 1296.

Here, too, I.M., S.M.'s general guardian, was fully aware of the litigation and, like the committee general guardian in *Auersperg*, "has affirmatively and repeatedly taken a position in

---

appointment power not triggered when natural guardian parent was present and opposed litigation).

support of" King serving as next friend and prosecuting this "suit as consistent with [S.M.]'s best interest and has expressed that position in two separate [emails]." *Id.* at 1294.

Good Shepherd's otherwise persuasive arguments about respect for parental power in familial matters such that litigation here is father's "sole prerogative" and that it is only "up to him to decide . . . the best interest of his child, not the child and certainly not a member of Kirkland," here militate toward the opposite conclusion. (ECF No. 85, at 2.) The major flaw in Good Shepherd's reasoning is that I.M. already has made a determination as to the best interests of his child, and that determination was that King is the best party-plaintiff to advance his daughter's interest. And, as intimated in *Auersperg*, this is a rational decision where, as here, substituting a disabled party's next friend with their general guardian would be costly, impose delays, and could result in a diminished quality of representation.[3]

### 2. Conflicts

Good Shepherd argues that there is a conflict of interest preventing King from standing as next friend following from King's employment at Kirkland and Kirkland's seeking "attorneys' fees" in the case. (*See* ECF 101, at 2.)

The Court concludes that there is no conflict preventing King from standing as next friend in this case. Any inference that King has a financial motive at odds with S.M. is unreasonable. Kirkland is litigating pro bono. King is an attorney with relevant litigation experiences that position her to "well-understand [her] fiduciary obligations to [S.M.] and . . . role[] as officer[] of the Court" as a next friend. *Bowen v. Rublin*, 213 F. Supp. 2d 220, 226 (E.D.N.Y. 2001).

---

[3] This would be a sufficient, independent ground to permit King to serve as next friend in 2019. While unusual due to how next friend cases are usually litigated, here, permitting King to stand as S.M.'s next friend best fulfills the parent's express commands for his child's claims.

King's employment at Kirkland does not change this. King is not acting as S.M.'s next friend as a Kirkland attorney, nor does she have any involvement in this case other than serving as next friend.[4] (*See* ECF No. 89-2, at 11 – 13; *see also* ECF No. 101 ¶ 8.) King's compensation is not affected by this case, nor would she receive any attorney's fees were they granted. (*See* ECF No. 101 ¶¶ 8 – 9.) Rather, Kirkland has now represented to this Court that if the firm were to receive any quantum of attorney's fees in connection with this case, it would have nothing to do with King and, moreover, the premium would be donated to a charitable cause consistent with its general pro bono practice. (*See* ECF No. 101 ¶¶ 9 – 11; *see also* ECF No. 99, at 13.) Contrary to Good Shepherd's assertion otherwise, then, neither Kirkland nor King is conflicted because neither "stand[s] to benefit" from the award, in Defendant's phrasing. (*See* ECF No. 85, at 1.)

### 3. Best Interests

To evaluate next friend standing, courts focus on the substantive quality of the representation by the next friend, not procedural formalities, as has also been discussed above. *See supra* II, III.A, III.B. In this case, Good Shepherd's filings are characterized by an "absence of anything to impugn the good faith of the party who brought an action as next friend" for S.M. "residing with a foster care agenc[y]," and thus King ought to be permitted to continue. *Child*, 412 F. Supp. at 595.

Changing course risks injuring S.M.'s interests. First, as noted above, it would attach costs and impose delays. S.M. and her father have both expressed a strong preference that King remain in the litigation, which S.M. explained as based in her ability to be "objective" about the

---

[4] This distinction is primarily what the weight of authority requires. *See Berrios v. New York City Housing Auth.*, 564 F.3d 130, 133 – 35 (2d Cir. 2009).

case, unlike I.M., who himself was involved in the litigation. (*See* ECF 89-1.) S.M.'s and King's statements and deposition testimony revealed that their relationship has become closer and that S.M. is comfortable relying on King's legal advice — a relationship of trust fostered by the litigation which has taken some time to build. (*See id.*; *see also* ECF 89-2.) The infant's approval of the next friend is not required, but if the child is mature and capable of participating in the litigation, courts have placed some weight on a mature child's (like S.M.'s) opinion as to next friend. *See Tinsley v. Flanagan*, 2016 WL 8200450, at *6 (D. Ariz. May 13, 2016). Additionally, the Court's power of judicial review over settlement adequately addresses any risk of disloyalty. *See Robidoux v. Rosengren*, 638 F.3d 1177, 1180 (9th Cir. 2011); *Hoffert v. Gen. Motors Corp.*, 656 F.2d 161, 168 (5th Cir. 1981), *cert. denied*, 456 U.S. 102 (1982).

**IV.     Conclusion**

For the foregoing reasons, Good Shepherd Services' motion for judgment under Rule 12(c) and to dismiss for lack of standing (ECF No. 85) is DENIED. Plaintiff's letter motion for an extension of time to complete discovery (ECF No. 86) is GRANTED. Counsel for the parties shall file a joint status letter setting forth their proposals for further proceedings, including discovery, within 21 days of the filing of this order on the docket.

The Clerk of Court is directed to close the motions at ECF Numbers 85 and 86.

SO ORDERED.

Dated: March 29, 2023
      New York, New York

_____
J. PAUL OETKEN
United States District Judge